WILSON, J.,
dissenting:
¶ 59. I dissent for two reasons. First, the Secretary of State did not cross-appeal the chancellor’s reversal of the agency’s findings and penalty related to Watkins’s non-disclosure of the development agreement. The Secretary does not seek reversal of the chancellor’s ruling and expressly acknowledges- that “the issue is moot for purposes of this- appeal.” The majority nevertheless raises the issue sua sponte and reverses in relevant part. The majority errs in doing so, as the issue is not properly before this Court.
¶ 60. Second, with respect to the part of the ease that is properly before the Court, the Secretary’s findings do not establish a violation of the Securities Act. The Secretary found that Watkins violated the Act by diverting funds to an unrelated project in contravention of a representation in the private placement memorandum (PPM) that bond proceeds would be used for the Metrocenter project only. In so finding, the Secretary dismissed as “irrelevant” Watkins’s claim that he was owed the al *1124 legedly diverted funds as payment for his work on the Metrocenter project However, for the reasons explained below, that issue is not merely relevant but is logically fundamental to the remaining claims against Watkins. If Watkins was owed the funds for work he did on the Metro-center project, then there was no violation of the representation that is the basis for the remaining claims against him.
¶ 61. The underlying facts of this case are in some respects complicated, but the Secretary’s final order may be summarized as finding that Watkins made basic two basic statements or omissions in connection with the April 2011 bond sale that were false or misleading: First, Watkins executed a loan agreement that included a representation that Retro Metro had disclosed any agreement that “materially and adversely affect[ed] its business, properties, assets, liabilities, operations, income or condition, whether financial or otherwise.” The Secretary found this statement to be false or misleading because Retro Metro had not disclosed a development agreement that obligated it to pay Watkins Development a minimum of $1,125,000 to design and construct the project. Second, Watkins represented through the PPM that Retro Metro would use the bond proceeds “to improve the Metrocenter shopping center” (and, implicitly, for that purpose only). The Secretary found this statement to be false or misleading because he found that Watkins diverted a portion of the bond proceeds to an unrelated project in Meridian.
¶ 62. The chancellor reversed the Secretary’s findings and penalties related to the first statement/omission. In ruling that the non-disclosure of the development agreement did not violate the Securities Act, the chancellor found that there was no evidence that the agreement was fraudulent or authorized excessive compensation; no evidence that the agreement was “adverse” to Retro Metro; and no evidence that its terms were material or would have contradicted the expectations of a purchaser of the bonds. The Secretary did not file a cross-appeal and does not argue that any part of the judgment below should be reversed. Indeed, the Secretary’s brief expressly states that “the issue [of the nondisclosure of the development agreement] is moot for purposes of this appeal.”
¶ 63. “[A] cross appeal is necessary to obtain a decision more favorable than that rendered by the lower tribunal....” Douglas v. Burley, 134 So.3d 692, 697 n. 6 (Miss.2012) (quoting Dunn v. Dunn, 853 So.2d 1150, 1152 (¶ 4) (Miss.2003)). As the Secretary took no cross-appeal in this case, the chancellor’s reversal of the Secretary’s findings and penalty related to the nondisclosure of the development agreement is not before this Court. The majority seems to imply that a chancellor’s partial reversal of an agency decision is somehow a jurisdictional issue that we must address sua sponte. See ante at (¶ 54). However, the majority cites no authority that even remotely supports that suggestion. The majority errs by sua sponte reversing the chancellor’s judgment in part.
¶ 64. The majority’s reversal of a ruling that is not properly before the Court not only results in the improper reinstatement of a penalty but also confuses the issue that is properly before us. Because there was no cross-appeal, we must accept it as settled that Watkins did not violate the Securities Act by not disclosing the development agreement. Dixon v. Breland, 192 Miss. 335, 6 So.2d 122, 122 (1942). The only issue before us is whether the Secretary’s findings support the legal conclusion that Watkins violated the Securities Act by using bond proceeds for a purpose other than the Metrocenter renovation project, *1125 i.e., by diverting proceeds to the Meridian project. For at least one logical reason, the Secretary’s remaining findings do not add up to a violation of the Act.
¶ 65. In finding violations based on the alleged diversion of proceeds, the hearing officer and, by extension, the Secretary stated in part:
Although [Watkins] argue[s] that more than $587,000 was owed to Watkins Development, whether or not the money [was] owed is irrelevant. The actual act of the transfer, particularly without any paperwork documenting the validity of such obligation, would operate as a deceit.
The Secretary made no finding that Watkins was not owed the $587,000. Moreover, by dismissing the issue as “irrelevant,” the Secretary effectively assumed, at least for purposes of this proceeding, that Watkins was owed the funds. The chancellor specifically adopted this reasoning in affirming the Secretary in relevant part.
¶ 66. The Secretary’s reasoning directly conflicts with the logic and basis of the remaining claims against Watkins. As explained above, the Secretary alleges that Watkins’s use of bond proceeds to purchase property in Meridian violated the Securities Act because it was inconsistent with a representation in the PPM that bond proceeds would be used “to improve the Metrocenter shopping center” only. However, if the “$587,000 was owed to Watkins Development,” then it was owed to Watkins Development for its efforts to improve the Metrocenter shopping center. Thus, the question whether the funds were “owed to Watkins Development” is not merely relevant but is fundamental to the remaining claims against Watkins. In the absence of a finding that the funds were not owed to Watkins, the Secretary’s conclusion that Watkins diverted the funds for an improper purpose cannot stand. If Watkins was owed this money, then the money was simply compensation for services rendered—consistent with the purpose designated in the PPM.
¶ 67. Further, I cannot understand or agree with the Secretary’s statement that, regardless of whether the money was owed to Watkins, “[t]he actual act of the transfer, particularly without any paperwork documenting the validity of such obligation, would operate as a deceit” and a violation of the Act. The relevant issue is not whether the transfer without a proper requisition and supporting documentation is questionable or misleading in some general or abstract sense. Rather, based on the remaining claims against Watkins in this case, the relevant issue is whether the transfer rendered false, misleading, or deceptive the representation in the PPM that the funds would he used for the Me-trocenter project. If Watkins was owed the money for services rendered to improve the Metrocenter, then the transfer was consistent with the relevant requirement of the PPM.
¶ 68. In other words, the conclusion that the “actual act of transfer” was not— in and of itself—a violation of the Securities Act does not imply or require a determination that the transfer was in all respects proper or consistent with all contractual requirements. There is evidence that the requisitions and supporting documentation submitted by Watkins were inadequate and did not satisfy the requirements of Retro Metro’s loan agreement. However, there is also evidence that the trustee bank accepted the requisitions and made payments, and Watkins asserts that some of the requirements of the loan agreement had been waived. Regardless, this issue is, at best, tangential to the Secretary’s claims against Watkins under the Securities Act. Even assuming that *1126 Watkins did violate the loan agreement’s requirements for requisitioning funds, without something more, that is a contractual issue, not a violation of the Securities Act. Contractually insufficient requisitions or inadequate paperwork would not render false or misleading the statements in the PPM regarding the purpose of the bond proceeds.
¶ 69. I also do not intend to suggest that the evidence establishes that Watkins was owed the $587,000. The development agreement can be interpreted to provide that Watkins Development was entitled to a $625,000 mobilization fee immediately upon the sale of the bonds, and Watkins testified that he had not received that fee as of June 2011. As the chancellor discussed, there appear to be insinuations that the development agreement provided for excessive fees, but there is no actual evidence to support those insinuations. Keith Parsons also opined that Watkins must not have met his obligations under the development agreement because the project was not completed on time and went into default, but Watkins blamed the City for delays and the default. The evidence in the record is simply insufficient to establish whether Watkins was owed the funds at issue. Therefore, it is certainly understandable that the Secretary made no finding on the issue. But for the reasons discussed above, the issue cannot be dismissed as “irrelevant.” It is central to the remaining Securities Act claims asserted against Watkins in this proceeding and cannot be assumed away.
¶ 70. Based on the evidence and findings in the administrative proceeding, we should reverse and render judgment in favor of Watkins. Accordingly, I respectfully dissent.
IRVING AND GRIFFIS, P.JJ., JOIN THIS OPINION.